IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRIEN CHERENFANT | : | |
| | : | |
| Petitioner, | : | 3:26-cv-2987 |
| | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| WARDEN, PIKE COUNTY | : | |
| CORRECTIONAL FACILITY | : | |
| | : | |
| Respondent. | : | |

## MEMORANDUM OPINION

Before the Court is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Adrien Cherenfant ("Petitioner"). For the reasons that follow, the petition will be granted, and Respondent Warden of the Pike County Correctional Facility will be ordered to immediately release Petitioner from custody.

## I. BACKGROUND

Petitioner, a citizen of Haiti and resident of Chile residing in the United States since 2023, alleges Respondent is unlawfully detaining him without bond under 8 U.S.C. § 1225(b)(2)(A), in violation of the Immigration and Nationality Act ("INA) and the Fifth Amendment's due process clause. (Doc. 1). He seeks his immediate release from custody or, alternatively, an individualized bond hearing.

On October 5, 2023, Petitioner applied for admission into the United States at the San Ysidoro Port of Entry using the CBP application.[1] (Doc. 6-2 at 4); (Doc. 6-3). He was served with a Notice to Appear charging him under 8 U.S.C. § 1182(a)(7)(A)(i) for lacking valid entry documents, placed into removal proceedings, and released into the United States on humanitarian parole. (Doc. 6-3 at 2). At that time, Haitian citizens like Petitioner were eligible to receive Temporary Protected Status ("TPS") and its associated benefits and Respondent own documentation show that Petitioner is "a foreign national of Haiti who had TPS that was terminated on August 7, 2026."[2] (Doc. 6-2 at 3).

On August 14, 2026, ICE officers conducted a "targeted enforcement action" and arrested Petitioner near Williamsport. (Doc. 6-2 at 3); (Doc. 6-5 at 2). On August 31, 2026, ICE issued a Notice of Custody Determination, informing Petitioner that he would be detained pursuant to 8 U.S.C. § 1226(a) and that he had the option to request a custody redetermination before an Immigration Judge ("IJ"). (Doc. 6-6 at 2). The Notice indicates that Petitioner requested a custody determination before an IJ.

---

1 CBP One "was a mobile application launched by the Department of Homeland Security in October 2020." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 57 n.2 (D.D.C. 2025). "It enabled noncitizens to book an appointment to appear for inspection at a port of entry, submit information in advance, and potentially obtain parole or admission into the country." *Id.* On January 25, 2025, "DHS removed the scheduling functionality from the CBP One app" and "renamed the application CBP Home, which it now says facilitates voluntary self-deportation." *Id.*

2 "TPS shields foreign nationals present in the United States from removal during armed conflict, environmental disasters, or other extraordinary conditions in their homeland." *Sanchez v. Sec. United States Dept. of Homeland Sec.*, 967 F.3d 242, 244-25 (3d Cir. 2020), *aff'd*, 593 U.S. 409 (2021).

On September 28, 2026, IJ Jason Frankenfield held he lacked jurisdiction to grant Petitioner bond because he "is an arriving alien, and pursuant to 8 CFR 1003.19(h)(2)(i)(B), an immigration judge may not redetermine conditions of custody for an arriving alien."[3] (Doc. 6-7 at 2). On October 2, 2026, an IJ denied all applications for relief and ordered Petitioner removed. (Doc. 6-8). As of the date of this opinion, Petitioner's removal order is not final because his time to appeal the IJ order to the Board of Immigration Appeals ("BIA") has not yet expired. 8 C.F.R. § 1241.1(c) (removal order becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

Respondent opposes the petition. (Doc. 6). Although Respondent acknowledges that Petitioner has not been provided with a bond hearing, it represents that a recent decision by the United States Court of Appeals for the Third Circuit does not control the outcome of this case because, unlike those petitioners, the Petitioner here entered the United States lawfully a valid port of entry and is properly classified as an "arriving alien." *See Buele Morocho v. Warden Philadelphia FCI*, __ F.4th__, 2026 WL 2546223, *1 (3d Cir. Aug. 28, 2026) (holding mandatory detention without bond under § 1225(b)(2)(A) for noncitizens "who had already entered the United States without inspection and been present for years" violates the INA and due process).

---

3 8 C.F.R. § 1003.19(h)(2)(i)(B) provides in part: ". . . . an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: . . . (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

Because Petitioner filed his habeas petition *pro se*, the Court will carefully consider Petitioner's arguments and "liberally construe[]" the petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining the Court's "[special] obligation to liberally construe a *pro se* litigant's pleadings is well-established"). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

## III. ANALYSIS

Although not raised by either party, the Court has jurisdiction to consider the petition.[4]

### A. Petitioner's Detention Under 8 U.S.C. § 1225(b)(2)(A) Violates the INA.

There are two statutory provisions at issue in this matter: 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a). Respondent maintains that Petitioner is mandatorily detained without bond under § 1225(b)(2)(A) because he "presented to a port of entry to seek admission to the United States, and an immigration officer found that he was not clearly and beyond a doubt entitled to be admitted." (Doc. 6 at 8). The Court disagrees.

Section 1225(b)(2)(A) is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and provides, in relevant part:

> **(b) Inspection of applicants for admissions**
> **(2) Inspection of other aliens**
> **(A) In General**
> Subject to subparagraph (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [removal proceedings] of this title.

8 U.S.C. § 1225(b)(2)(A).

---

[4] The Court incorporates by reference its prior jurisdictional analyses set forth in similar habeas petitions filed by civil immigration detainees. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025); *see also Richeme v. Warden*, 2026 WL 937546, at *2-3 (M.D. Pa. Apr. 7, 2026). Furthermore, Petitioner is not required to exhaust his administrative remedies. *See Basboga v. Jamison*, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026) (requiring exhaustion of due process claim would be futile because neither an IJ nor the BIA "have authority to adjudicate" constitutional claims).

Section 1225(b)(2)(A) "imposes mandatory detention if: (1) an 'examining immigration officer,' (2) determines that an 'applicant for admission,' (3) is 'an alien seeking admission,' and (4) is 'not clearly and beyond a doubt entitled to be admitted."[5] *Buele Morocho*, 2026 WL 2546223, at *2. Applicants for admission under § 1225(b)(2)(A) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole, however, "shall not be regarded as admission of the alien." 8 U.S.C. § 1182(d)(5)(A).

8 U.S.C. § 1226, in contrast, is entitled "Apprehension and detention of aliens," and provides:

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

---

[5] "Congress defined 'applicant for admission' in § 1225(a)(1), which provides '[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.'" *Buele Morocho*, 2026 WL 2546223, at *3 (quoting 8 U.S.C. § 1225(a)(1)).

8 U.S.C. § 1226(a).

"Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 303. It further "permits the Attorney General to release those aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Id.* (quoting 8 U.S.C. § 1226(a)). "Unlike § 1225(b)(2)(A), § 1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho*, 2026 WL 2546223, at *1.

Before *Buele Morocho* was decided the Court found that the detention of similarly situated "arriving aliens"—noncitizens who entered the United States at a port of entry, were granted discretionary parole and released into the United States, and were arrested and detained years later— was governed by § 1226(a), not § 1225(b)(2)(A).[6] *See Fonseca v. Lowe*, 2026 WL 2211765, at *3-4 (M.D. Pa. July 31, 2026); *see also Richeme*, 2026 WL 937546, at *6; *Ventura Gomez v. Lowe*, 2026 WL 1558421, at *2-4 (M.D. Pa. June 2, 2026); *Perdomo-Cauro v. Warden*, 2026 WL 1471220, at *2-4 (M.D. Pa. May 26, 2026). Although Respondent argued that the petitioner's status as an "arriving alien" subject to mandatory detention under § 1225(b)(2)(A) remained unchanged despite the grant of humanitarian

---

6 On August 31, 2026, the Third Circuit panel held in *Buele Morocho* that mandatory detention without bond under § 1225(b)(2)(A) for noncitizens "who had already entered the United States without inspection and been present for years" violates the INA because those individuals are not "seeking admission" within the meaning of the statute. 2026 WL 2546223, at *1. The panel further held that mandatory detention without bond under § 1225(b)(2)(A) violates procedural due process. *Id.*

parole and release into the interior of the country, the Court rejected that argument as without merit and held that detainees similarly situated to Petitioner can be detained, if at all, pursuant to 8 U.S.C. § 1226(a).[7] The rationale behind those decisions was that by granting the petitioners discretionary parole and releasing them into the United States years before, that meant that petitioner "is no longer 'seeking admission' within the meaning of § 1225(b)" at the time they were later arrested and detained. *Saidov*, 2026 WL 789087, at *3; *see also Richeme*, 2026 WL 937546, at *6 (same).

The Court will again reject Respondent's attempts to detain persons similarly situated to Petitioner without bond under § 1225(b)(2)(A). Although Petitioner remains an "applicant for admission," at time of his August 2026 arrest and detention Petitioner was not "seeking admission" to the United States within the meaning of the INA. Respondent's interpretation of the INA here "would permit it to treat an immigrant who was inspected at the border and paroled into the United States 'as seeking admission' even if that person

---

[7] *See, e.g.*, *Richeme*, 2026 WL 937546, at *6 (collecting cases); *Saidov v. Jamison*, 2026 WL 789087, at *3 (E.D. Pa. Mar. 20, 2026 ("Respondents assert that the present case is an 'Arriving Alien' case, which they define as 'individuals who presented at a port of entry without valid entry documents, were paroled into the country under 8 U.S.C. § 1182(d)(5)(A), and, after a passage of time, recently detained under 8 U.S.C. § 1225(b)(2)(A). While Respondents distinguish this category of cases from 'Hurtado cases,' they note that both categories share the same authority for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Thus, the Court's statutory analysis above applies in this so-called "Arriving Alien" category of cases."); *Gagiev v. Rose*, 2026 WL 657739, at *1 (E.D. Pa. Mar. 3, 2026) (granting habeas relief to alleged "arriving alien" where petitioner "was granted humanitarian parole upon his entry to the United States, and that parole was terminated"); *Id.* at *10 ("Nor is [petitioner] subject to mandatory detention under section 1225(b) by virtue of the termination of his parole. In reaching this conclusion, we concur with the persuasive interpretations of numerous courts, both in this district and across the country, which have found that section 1225(b) does not authorize expedited removal and detention of noncitizens who were paroled in the United States under section 1182(d)(5)(A).") (collecting cases).

arrived in the country years ago." *Saidov*, 2026 WL 789087, at *1. Moreover, Respondent's interpretation fails to account for the fact that Petitioner was already in the United States for approximately three years when he was apprehended and arrested in August 2026. *Id.* Because Respondent granted Petitioner discretionary parole and released him into the United States in 2023, that "means that he is no longer 'seeking admission' within the meaning of 8 U.S.C. § 1225(b)."[8] *Id.* at *3. Accordingly, the Court will grant the petition because Respondent is unlawfully detaining Petitioner without bond under 8 U.S.C. § 1225(b)(2)(A).

**B. Detention Without Bond Under § 1225(b)(2)(A) Violates Petitioner's Fifth Amendment Right to Procedural Due Process.**

Petitioner also claims that his detention without bond violates the Fifth Amendment's procedural due process clause. It is undisputed that Petitioner is entitled to the protections of the Fifth Amendment's due process clause. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstances change, for the Due

---

8 Nor does the "entry fiction doctrine" change the Court's conclusion. *Gagiev*, 2026 WL 679119, at *11 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 93 L.Ed. 956 (1953); *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020)). The entry fiction doctrine, "treats noncitizens parolees—for due process purposes—as if they remain at the U.S. border." *Id.* Pursuant to the entry fiction doctrine, the due process rights of "an alien on the threshold of initial entry" is limited to "[w]hatever the procedure authorized by Congress is." *Shaughnessy*, 345 U.S. at 212. The Court finds that the procedure authorized by Congress for persons like Petitioner "who had been paroled into the United States and developed substantial connections within it prior to their detention, is detention pursuant to 8 U.S.C. § 1226—not § 1225." *Gagiev*, 2026 WL 679119, at *11. It will thus adopt the same approach as Judge Kelly of the Eastern District of Pennsylvania in *Gagiev* and conclude that the "entry fiction doctrine" does not apply to Petitioner and that his detention is pursuant to 8 U.S.C. § 1226. *Id.* at *11-12.

Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Applying the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976) to Petitioner's mandatory detention without the opportunity for bond, the Court must weigh three factors: (1) the "private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* 424 U.S. at 335.

As to the first *Mathews* factor, the private interest affected here is significant, as the "official action" has deprived Petitioner of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting "the most elemental of liberty interest—the interest in being free from physical detention."). "Detention, no matter the purpose, is a significant deprivation of liberty requiring due process protection." *Basboga*, 2026 WL 3033623, at *6 (citing *Jones v. United States*, 463 U.S. 354, 361 (1983)).

Second, "the lack of an individualized custody determination poses a dangerous risk of erroneously depriving" Petitioner of his liberty. *Id.*; *see Buele Morocho*, 2026 WL 2546223, at *9 (risk of erroneous deprivation of liberty remains high in "the absence of an opportunity for a neutral decisionmaker to assess" whether the noncitizen is a danger to the community or a flight risk).

Third, the Court acknowledges the Government has an interest in detaining noncitizens to ensure their appearance "at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. However, Respondent's own documents reveal that Petitioner has no criminal record, and Respondent does not claim that Petitioner poses a danger the community if released or is flight risk. (Docs. 6, 6-2 at 4). "At the same time, requiring the Government to conduct individualized custody determinations would impose minimal burden." *Basboga*, 2026 WL 3033623, at *7.

Balancing the *Mathews* factors, the Court concludes that Petitioner's mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A) violates his procedural due process rights under the Fifth Amendment. Accordingly, the Court will grant the petition because his mandatory detention without bond violates both the INA and the Fifth Amendment's procedural due process clause.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted because his mandatory detention without bond under 8 U.S.C. § 1225(b)(2)(A) is unlawful and violates the INA and due process. Respondent will be directed to immediately release Petitioner Adrien Cherenfant from the custody of the Warden of Pike County Correctional Facility and file a declaration pursuant to 28 U.S.C. § 1746 confirming that Petitioner has been released from custody. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (acknowledging that a habeas court has "the power to order the conditional release of an individual unlawfully

detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *see also Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 410 (D.N.J. 2025) (ordering immediate release); *Patel*, 2025 WL 3516865, at *6 (same).

Respondent will be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b), absent a compelling change in circumstances. *See Bethancourt Soto*, 807 F. Supp. 3d at 410 (permanently enjoining respondents from detaining petitioner under § 1225); *Patel*, 2025 WL 3516865, at *6 (same). If Respondent elects to later detain Petitioner under 8 U.S.C. § 1226(a), the Respondent must provide Petitioner with notice and an opportunity to be heard at a timely individualized bond hearing where an IJ will assess whether he is a danger or flight risk. A separate Order follows.

Robert D. Mariani
United States District Judge